Good morning, Your Honor. May it please the Court, Jessica Ring Amundsen on behalf of Appellant CRST Expedited, and I'm joined by my co-counsel, Paul Gomez. In the decision below in granting summary judgment to Transam as to both CRST's tortious interference and its unjust enrichment claim, the District Court made fundamental errors of law and impermissibly construed the facts in the light most favorable to Transam. And I'd like to begin this morning with the tortious interference claim. In holding that CRST could not show as a matter of law that Transam caused CRST's drivers to breach their contracts, the Court's most fundamental error was in failing to separately analyze causation for the breach of the non-compete provision of the contract, or otherwise to take into account that the contracts were not at will. The District Court was solely focused on the question of whether what Transam did caused the drivers to leave their employment with CRST, but that was not the relevant question. The relevant question was whether what Transam did caused the drivers to breach their contracts with CRST. And there, it is critical to separate out the two contractual obligations that those drivers had. First, as to the non-compete obligation, the causation question essentially answers itself. The obligation was not to go work for a competitor during the 10-month restrictive term. Transam's offer of employment to those drivers is necessarily the but-for cause by which they breached their obligation not to go work for a competitor. The District Court wholly failed to take into account the non-compete provision and did not address it anywhere in its decision. Although CRST briefed and set forth that the governing provision of the restatement was actually Restatement 768, which deals with non-compete obligations, the District Court never analyzed that at all. And there, Restatement 768 says that where an employee is subject to a non-compete obligation, even if the competitor is justified in inducing the employee to leave their employment, the competitor is not justified in engaging the employee to work in a job that would mean violation of the non-compete obligation. What is that authority again? That's Restatement 768, Comment I. And is that the sole basis, too, for the improper conduct? Improper conduct being one of the elements that would need to be proven? That's right, Your Honor. And we pointed the court to, as you know, the District Court didn't actually reach the improper conduct element, but we gave the District Court and have briefed before this court numerous cases in which it is held that it is improper to hire away an employee that you know to be subject to a non-compete obligation. And I would point the court to the Magic Valley case, where the court says, in order to be liable for tortious interference with a non-competition covenant, it is not necessary that the new employer actively induce the employee to leave his former position. The issue of paramount importance is whether the new employer, with knowledge of the covenant, engaged the employee to work for him in an activity that would mean violation of the contract not to compete. What is the evidence of the knowledge here? So Your Honor, there are at least five ways that Trans Am is on knowledge of the contract. So first, Trans Am is obligated by DOT regulations to verify the prior employment of the drivers. So Trans Am sends an inquiry to CRST and CRST sends back a form response that says, this driver is under contract with CRST. CRST then follows up second with a letter specifically about that employee and says, this employee is under contract with CRST. We are not releasing this employee from their obligation. On that letter further... So my understanding is literally every single employee, even if they weren't under contract, was viewed as being under contract with CRST. And so they literally got a positive response on every single employee they verified. Your Honor, the only drivers that are at issue in this case, the 167 drivers, are drivers that left within the 10-month term of their contract. And so it is true that CRST does send that form response with respect to any employee who has left without fulfilling their obligations. So if a driver... The driver has, as I've said, dual obligations to CRST. The first is to drive for CRST for 10 months. And the second is not to drive for a CRST competitor during those 10 months. The employee can buy out of either of those obligations by paying back the training costs. And maybe it's worth just taking a step back for a moment to set sort of the context here of the program that is going on, which is that CRST has developed an innovative solution to the problem of a chronic shortage of drivers in the long-haul trucking industry. CRST operates its own driver training program whereby it pays upfront all of the costs for students to attend the driver training program and obtain their commercial driver's license. In return, and this allows people who otherwise would not have the means to obtain a CDL to do so. In return, CRST asks those employees to make two commitments. One is to drive for CRST for 10 months at a reduced rate so that CRST can recoup their training costs that they have already outlaid on behalf. Council, what about the fact, though, and, you know, I want to get back to the legal issues because I understand the way that it's set up and the differences in the way those two businesses do their...conduct their trucking operations. But what about the fact that Trans Am didn't just target CRST employees? And you cited a restatement provision, but that doesn't get at the situation in which you put a general posting up to everybody. And it just so happens that a number of CRST employees apply and then they end up hiring CRST. Those, I think that restatement provision goes more towards targeting the employees of a competitor rather than this situation. What's your response to that? So, Your Honor, I want to be clear that what we're talking about is not the general advertising. That's not what we're saying is where the breach occurs. The breach that occurs is when Trans Am makes an offer to the employee to come work for Trans Am, knowing that that employee is subject to both a fixed term and a non-compete obligation. And to add on to my answer earlier to Your Honor about the notice that Trans Am had, it's not only that form response, it's also a letter. And that letter actually refers back to a Western District of Oklahoma case, the J.B. Hunt case, in which the court upheld CRST's restrictive covenant and enjoined another trucking company from doing what Trans Am is trying to do here. The third way that Trans Am is on notice is, of course, the J.B. Hunt case itself. Parties are presumed to know the law, and that is a case out there that is holding that CRST's contracts are valid and that competitors can't interfere with them. The fourth way is that CRST sent an explicit cease and desist letter in May 2014 to Trans Am that is attached to our complaint in the unsealed appendix at page 31. And then finally, there's the complaint itself in this case. And Trans Am continues to this day to hire CRST employees, knowing full well the provisions of CRST's contracts. And I think what's important to also emphasize is that CRST is, of course, seeking damages in this case, but it is importantly seeking an injunction. What CRST wants is to stop its competitors from poaching its employees when it has made the outlay, paid for their training costs, paid for them to obtain their CDLs. And then other, Trans Am is essentially free-riding on the investment that CRST has made in training its employees and picking up those employees. There are no damage claims? There are damage claims, Your Honor. There are, we are seeking damages, but I'm saying that- I read all these briefs and we don't hear about the injunction. I mean, I did a lot of restrictive covenant cases, not in Iowa, in private practice. And this is not the typical way they arise. And typically, if you seek damages against an individual employee, the new employer is effectively on the hook because they've covenanted to reimburse  But it didn't arise that way here. And I can't, is the Idaho Court of Appeals the only court you could find in the country that's had an interference with contract in this restrictive covenant situation? No, Your Honor. We also cited the Fowler case, which, the Maryland case, and then the Fowler case itself cites a number of cases. Iowa's never had a case? We are not, we have not found an Iowa case that specifically raises this, but Your Honor. Minnesota's got more than 100 years of restrictive covenant litigation. Your Honor, with respect to intentional interference with contract with a non-compete obligation, we've cited the relevant law. And what's critical to realize, Your Honor, is that Trans Am has cited no law holding for them, that it is not intentional interference with contract to hire away an employee who is subject to a non-compete obligation. What Trans Am has in their brief, they say in footnote 16,  that these employees are not at will. You can see that for, how many drivers do you have to prove to win your injunction, breach their covenant, in your view? If we, if the case goes on. If the case goes on, I think if one driver, Your Honor. One driver gets you a permanent injunction? Well, Your Honor, what is critical to realize here is that what Trans Am is doing is free riding on the claims here. And, and, and. Okay, well free ride, that's, that's what I was going to ask. Aren't there any free riding interference cases? Where. The antitrust world is full of, of free riding holdings in dicta. That is a term that came to mind when I looked at this, thought about this case. There are no cases that talk about whether free riding is improper under, under the inner, the, the restatement standards? Well, Your Honor, what, what, what I would point the court to, I don't have a case to cite to Your Honor, about free riding. So just, just paying more or, or just saving the cost has not been litigated? As to, as to interference liability? Your Honor, what has been litigated is, is hiring away an employee that is subject to a non-compete obligation. Or just hiring away an employee that has made a commitment. And that goes back to the 1853 case of Lumley. That's the foundation of the restatement. Well, generally, you know, the, the, the, the, the employers in your client's situation lose these cases when they pursue the employee. Because the, the judicial instinct is, is everybody, you know, deserves to, to have a job. And so the covenants are either stricken or narrowed or found to be not violated. So you're, you're kind of end running the, the bulk of the precedent in this situation. And, and, you know, what you say, I've got a Maryland and an Idaho case and they've got nothing. Your Honor. That confirms to me, this is an end run of, about, about the, the, the way this issue is typically litigated. Your Honor, I don't think that we're end running the precedent. And we're, we're not at, here's the precedent that they cite. So, so I'll point the court to the precedent that they cite. They say, look, there are actually lots of cases where employers are held not liable for interfering with a contract that's not at will. And they cite this treatise. Well, they, what they cite is this treatise, Kalman on unfair competition. And I'll just read the court what Kalman, the treatise on unfair competition says. I want to, I view restrictive covenant situations as quasi-generous or unique. So don't tell me what Kalman says in, in, you know, in the general law is, neither side. I want to know what the courts have said about, about restrictive covenant claims when the claim asserted is intentional breach of contract, which is not typical, I believe. So, Your Honor, what the courts say, and, and I, I understand Your Honor doesn't want to hear what Kalman says, but it is actually summarizing the non-compete cases. And it says, one who hires an employee with knowledge that the employment will violate a covenant not to compete is liable for damages and should also be enjoined. It is not necessary to show any inducement other than the fact that the subsequent employer assigned the employee to engage in an activity which the subsequent employer knew would require a violation of the covenant not to compete. And I think, Your Honor, what's also critical to understand here is that the district court just stopped at the causation analysis. We're simply talking about the causation analysis and the error in the district court's opinion. What the district court held was that as a matter of law, CRST could not show that what But with respect to the non-compete obligation, that's simply, the logic doesn't follow. Of course, an employee cannot violate the non-compete obligation of their contract without an offer of employment from the competitor. And so, at least with respect to the non-compete obligation, we think that the district court's analysis was in error. And we want to stress that even if the court accepts the district court's reasoning as to the fixed term obligation, it simply cannot affirm on the basis that the district court didn't even analyze the non-compete provision. I want to follow up on the thing you just said. It sounds like you're saying but for causation, but my understanding of the district court's opinion was it was proximate cause. So, you're right that but for the offer of employment, they potentially wouldn't have breached the contract, allegedly breached the contract. But I understood the district court to be saying something different, that it wasn't the proximate cause of the damage. And that's where I think the district court got itself sort of hung up. But actually, Iowa follows traditional but for causation principles and the offer of employment is necessarily the but for cause of the breach of the non-compete obligation. If the court has no further questions, I'll reserve the balance of my time for rebuttal. Ms. Hamilton? May it please the court? Counsel? My name is Brenda Hamilton and I'm here on behalf of the Appalachian Cross Appellant Trans Am Trucking Inc. with my co-counsel, Julie Parisi. And I'd like to start by saying Trans Am is requesting respectfully that this court affirm the summary judgment that the district court granted to it on the tortious interference claim as well as the unjust enrichment claim. Specifically, focusing on the causation issue that the court decided the summary judgment on with respect to the tortious interference claim, I think it's clear from the record that there are no facts, no evidence at all that CRST has been able to point to that would show that Trans Am intentionally induced the drivers to breach their contracts or that Trans Am improperly interfered with those contracts. Both of those elements are required under longstanding Iowa law as well as the restatement second of torts, section 766 and section 767 that the Iowa courts follow here in these kind of cases. This court itself has noted that when a plaintiff is trying to prove a tortious interference with contract claim, they have to show intentional inducement. That was noted in the rail intermodal case. I think it's rail intermodal specialist versus GE capital. Here, looking at the intentional inducement part of the elements that have to be shown to make out a case for tortious interference with contract, the undisputed evidence shows that Trans Am engaged only in passive driver recruitment efforts. It merely hired the 167 former CRST drivers that are at issue here. That's all it did. It hired them. Then only after those drivers approached Trans Am. There's no evidence in the record. Do you think there's nothing in the record that would permit the inference of intentional free riding? I do. I agree with that. There is no evidence in the record that would show that. I didn't say it as a fact. I asked if you thought if your argument was including that. Because as I understand it, your client pays a new driver 6,000 to reimburse for his training if he hasn't been trained by a competitor. Is that it? You're talking about the tuition reimbursement program that Trans Am has in place? I believe, your honor. What does it save? What does the record show it saves your client when it succeeds in employing a driver trained by CRST during his covenant period? I don't think the record shows that Trans Am necessarily saves anything when it does that. With respect to experienced drivers. How can that not be in the record? Well, I don't think it is in the record, your honor. I don't think that I don't think Trans Am is necessarily saving money in this instance. Then why is it taking the risk of this lawsuit? You know, your honor, what Trans Am is trying to do. Along with other competitors, I gather. Trans Am is really just trying to compete in the marketplace. And what these cases come down to is wrongful conduct. Yeah, there's fair and there's unfair competition. I agree with that, your honor. And in this case, what we're saying is that there's no evidence in the record to show that Trans Am did anything that was improper or wrong. And focusing on the inducement part of the case. Before you move on, though, opposing counsel, I asked a question along the lines of what you're saying now, which is there's no direct advertising to CRST employers. It's general advertising. They say it doesn't matter because once we told them that these employees were under contract with CRST and knew that they had a non-compete clause, hiring them was improper in and of itself. What's your response to that? I think that that particular issue, knowledge, I think you could almost assume that there was knowledge and still reach the same conclusion here because the inducement issue is separate from the knowledge requirement. And the restatement says, for instance, Section 766, I think it's comment in is a Nancy, that merely hiring an employee, knowing that they're under contract with another employer, and when they come to work for you, they're going to breach that contract is not enough to show inducement. You have to show more than merely hiring somebody knowing that they had a contract. Are you relying on 768 with its exemption for fixed term contracts or the general pronouncements in 766 and 67? We are not relying on 768. And to the extent. I think it's bad for you, frankly. Your Honor, here's what I think. It's what you have to deal with. The fact that 768 addresses this specific situation and carves out fixed term contracts. Your Honor, I don't read Section 768 that way. I don't think Section. All right. It specifies it's talking about at will contracts. There are two sections. Section B carves out and says we're not addressing fixed term interference with fixed term contracts. Claims of interference. I think when you look at that language and compare what the second paragraph, which is where that language is, I think you're referring to, and compare that to what's in the first paragraph where they carve out the at will contract and the prospective advantage. I was talking about the first paragraph, I think. All right. Well, the first paragraph of Section 768 is the competitor's privilege, and it would not apply here because CRST has taken the position that this is not an at will contract, and that's how the district court viewed it, too. So Section 768, if you look at the second paragraph, it says the safe harbor rule, if you will, the competitor's privilege that's in the first paragraph, would not apply to a non-at will contract, if you will. And CRST has cited one of the comments in 768 to suggest that somehow that allows some of an automatic win for them if they just rely on Section 768. I think what they're effectively arguing is that it automatically gives you, Section 768 somehow automatically gives them a free out. But the problem with that is it ignores the other rules. Specifically, the law is clear and the restatement is clear that if all you're doing is hiring an individual knowing that they're under contract with someone else, whether that's a fixed term covenant or a non-compete, that's not enough to establish inducement. It's also not enough. Well, you mentioned non-compete. Their argument is not only are you free riding on employees that have a fixed term contract, but they have a non-compete agreement and Trans Am knows that. So what's the significance of any of the non-compete portion of the contract? Well, I think it's no different than a fixed term would be here, and Section 768 wouldn't apply there anyway at all. You still have to show inducement. Section 768 does not excuse the need to meet all of the elements that are required for tortious interference, which includes inducement as a separate element, and they can't show that here. I think that it's a complete misreading of Section 768, and they haven't cited a single case from Iowa that says otherwise. I also wanted to turn to— I think this over-reliance on the very ambiguous and often internally inconsistent comments in the three restatement provisions is a mistake. Well, Your Honor, there are some cases we can look at, too. I think the issue came up a moment ago about are there any Iowa cases that could be relied upon with that? I want restrictive covenant cases. Restrictive covenant cases. And what we cited to the court was cases that are out of Iowa. There's the Curry's Transportation Services, Inc. v. Dotson case. It's an Iowa appellate court case. It's cited in the briefs. And in that case, the court dismissed a tortious interference claim because the plaintiff had failed to establish that there were enforceable non-compete covenants. So that is a case where the tortious interference claim failed. And the Iowa office supply case— Because if that's the holding, then the district court erred here because it didn't get that far. If that was the only basis for dismissing the tortious interference, that you didn't prove there was a covenant that was breached, we have the converse here, at least so far. Well, I think the court should— You have to win your avoidable-slash-void covenant argument. That's correct, Your Honor. And we think that we should have won that. Obviously, we've breached that issue as well. I think, from my decades of working with covenants, I think that that's a non-starter, this covenant. Other than the argument that imposing a covenant in order to save costs as opposed to protecting your drivers—milk truck drivers are the 19th century examples of these cases. But this notion that a business interest does not include recovering costs, that's a non-starter. Well, Your Honor, since we're talking now— I'm talking about a 10-month covenant. I have never seen a covenant more facially non-voidable than this one, frankly. We view it differently, Your Honor, and the reason is because, from our perspective, there are no protectable interests that are reasonable here. And the reason is because the only protectable interest that the CRST has pointed to is that it wants to protect its training here, the training costs, and it wants to protect the fact that it has debt that these—the driving—these school costs that it wants to recover. What's unreasonable about that? Why isn't that, A, it's clearly a business interest, and what's unreasonable about it? Well, I think the law—I think the law says something different, Your Honor. I think the law in Iowa says that you cannot protect training costs. That's not a—that is not a proper, enforceable— What's the case on that? Protectable interest. I'm going to cite you to the—Dan's Overhead Doors and More versus Wintermark, Iowa Court of Appeals case from 2007. And in that case, the court refused to enforce restrictive covenants because what was being protected there, the protectable interest that was at issue, was training costs that had been used to train the employees. That case involved overhead door service—servicemen, and they had come to the plaintiff, employer, with no prior experience. They'd received retain—training from the employer for two years, had been sent to get instruction in leading door industry, education, and welding instruction, on-the-job instruction, so on and so forth. What the court determined was the employer could not properly use a non-compete to protect the fact that it had spent its time and money to train these individuals because they were just being trained to do ordinary work. So it refused to enforce restrictive covenants. And it said under Iowa law, you have to show that you've trained them to do unique and extraordinary skills. And if you're just training them to do ordinary work, that's not enough. So the court said, no, no protectable interest. Therefore, these restrictive covenants aren't enforceable, and we're not, we're not going to, we're not going to enforce them. That's, that case is very good authority here because that's all that happened here, is the drivers were not trained to do any unique or extraordinary skills. It's ordinary work, driving a truck. I think that's very good authority here for why that is not a protectable interest. And when it comes to protect using a non-compete or using a non-compete and the fixed term to try to protect the debt that these drivers each had incurred and owed something like $6,500, a CRST has identified that as one of its protectable interests too. And simply trying to use a restrictive covenant to protect your debt that an employee owes you is not enough. I assume the employee from the typed caption was the, was the defendant in Dan's. Not a competitor. I believe they were trying to enforce it against the employees. I believe that's correct. Yes. So it reflects the judicial intolerance of trying to prevent people from earning a living. But the Iowa law is still the same in terms of do you have a protectable interest or not? You know, it has to be specialized, extraordinary, unique. That covenant might well not have been, that might have been voidable as to Wennemark, but not void and not insufficient to lay a framework for a breach, interference claim against the competitor. Yeah, I'm not aware of any cases that necessarily say that you would make, in terms of evaluating the protectable interest, whether or not, whether you would look at the employer in a different situation than the employee. Oftentimes they are before the court at the same time. The protectable interest either is there or not. It's either a legitimate restrictive covenant or it's not. And our position in this case is that it, it's overbroad and therefore it's illegal as a matter of law because it's an illegal restraint of trade. Which gets into the void voidable issue that we brief for the court. Our position, Trans Am's position is that this is a void, void ab initio because this restrictive covenant was overbroad and therefore from the get-go was not enforceable. Overbroad how? Overbroad in the sense that, well, unreasonable. I should say unreasonable, Your Honor. It was not overbroad. Well, I mean. It was limited to the training period. The only overbreadth here would be, would be timing. It's not the geographic overbreadth that most, most covenant cases involve. Well, we could go down that path as well and talk about the geographic broadness. And I did want to point out, though, that the 10-month period does not track the, the, there's no evidence that that tracks the training period. The training period that we're talking about is really during the training school period, which is before they even start doing the job. So they, they do some training. They go to driving school. That would be a, that would be a jury argument. Well, I don't know that it would necessarily be a jury argument, Your Honor. I think whether or not a restrictive covenant is enforceable is a matter, is an issue for, of law for the court. But you had made the comment that you thought that the 10 months tracked the training period. And I do not think that's what the, the record shows in this instance, which is another reason why it's, it's unreasonable. So I just want to back up. Short probationary period, I'll bet, for in the truck, in the trucking industry. Well, I, I, I can't comment on that, Your Honor. I don't think that that evidence is within the record necessarily. I'm not sure that that's accurate. But the record doesn't reflect anything on that as far as I'm aware. To just sort of back up a minute, I wanted to go back and point out that, that our, our argument is really focused on when it comes to that void, voidable issue and whether or not there's an enforceable contract, which is a, one of the elements as well. That, that issue turns on whether or not there's a protectable interest. The two that we mentioned and already talked about, protecting training costs, protecting a debt that's owed to them by the drivers, are the two that have been identified. And as a matter of law, I don't think that the law will hold up that those are actually protectable interests. And it's something that the court itself can decide. I wanted to turn our attention to the unjust enrichment claim and respectfully request that the court uphold the grant of summary judgment to Trans Am on the unjust enrichment claim as well. There. On that, my reading, my reading of, of Unisys and Okoboji, is the district court got it wrong. There is no flat prerequisite that there be an independent tort. That doesn't mean it's irrelevant, but I, I think the district court's reasoning was, was inadequate there. Well, that was the alternative ground. There was, there was the major ground. There wasn't any showing of that, of unjust enrichment. Well, I, I, I, we, we don't believe that Okoboji would govern here either. And I think on the, the simple way to get to, to the, the answer on this unjust enrichment claim is the fact that because the district court judge got the torsus interference claim, the decision on summary judgment on the torsus interference claim right, and, and bounced that claim, that would take care of the unjust enrichment claim as well because you have to show some sort of a unjust, unjustness or improper conduct. I think the financial marketing services versus Hawkeye Bank case. Is that true though, only if we affirm on the ground, on the ground of improper conduct, or would that be true if we go to the inducement prong of torsus interference? In other words, what I'm getting at is the overlap here really is the overlap only with the improper conduct part of the claim. I don't think it is just on the improper conduct. I think if, if they don't establish the, any of the elements and they can't, in whatever respect, they can't establish a torsus interference claim, I think that claim fails, which means the unjust enrichment claim would fail as, as well. Torsus interference as a, as a whole requires some kind of improper conduct, generally speaking anyway, and it's also obviously one of the specific elements. So I think if it fails on any grounds, then, then the whole thing falls and the unjust enrichment claim as well. The other thing I wanted to mention about the unjust enrichment claim is that in this situation, it's not that CRST conferred a benefit on Trans Am. Rather, what happened is the drivers have conferred a benefit, if anybody has on Trans Am, because they received the training and they take that training with them under Iowa law. One who has general knowledge and skills, and whenever an employee gets them from working from one employer, they get to take those to the other employer. And here that's exactly what CRST did. It's consistent with the law. And then the, the other thing I wanted to mention is that what they're seeking here is to, CRST is to disgorge Trans Am's profits from, from having hired drivers that were already trained. The problem with that is under the case law in Iowa, there really needs to be a readily identifiable benefit. Under the cases, that seems to be pretty clear. And here there isn't any readily identifiable benefit. You can't really point to any specific profits, nor, nor has CRST done so. And that's why the district court judge said that he, he, that, that, that seeking profits would be, those profits would be easily disconnected from the value of any services CRST might have performed. We think that was the right decision. So for these reasons, we ask that the court affirm the district court's grant of summary judgment. Thank you. Thank you. Ms. Hammondson for rebuttal. Thank you, Your Honor. I'd like to just start with the unjust enrichment claim, since we didn't get to that in the initial presentation. Here, I think Judge Loken, you're, you're right, that the district court got it wrong by holding that. That was an alternative ground, the second ground. It was, the court held both, yes. Then it's turned around and it becomes the main focus on appeal. But I think the primary ground is where you better direct your attention. Well, Your Honor, the other ground that, that there must be some independently tortious conduct, unjust enrichment claims, if you look at the restatement and the Supreme Court of Iowa's decision in the Unisys case. The profits the defendant may have realized by employing former drivers are entirely disconnected from the value of any services CRST may have performed. That's what I took to be the primary ground for dismissing this claim in the district court's view. So what, where the district court got that wrong is what Trans Am receives is the services of the drivers for which CRST has paid all of the training. And that Trans Am knows that it is unjustly enriched is evident from the fact that Trans Am's own policy is to reimburse drivers $6,000 of tuition if they are trained at schools other than CRST or a competitor's school, but not to provide tuition reimbursement to those who come from, from a competitor. And so it's, CRST pays all the upfront costs for this driver to receive their license. How does that translate into a claim for disgorgement of profits? Because the, the, what, what Trans Am is getting is the services of the driver. And it's important to remember here, Your Honor, that this is a very tight labor market. This is a zero-sum game. If a driver is not driving for CRST and is driving for Trans Am, that means a load that Trans Am can take that CRST cannot take. And that also is what distinguishes, I think, the, the Dan's overhead case that, that counsel relied on. There is no evidence at all in that record. And the, the court actually says in the Dan's overhead case that there's no evidence that there's a scarcity of employees to fill the job. Here, it's well documented in the record that there is a scarcity of employees to, to, to fill that job. I want to turn also to counsel's claim that some additional form of inducement is required above and beyond making an offer to an employee that the employer knows is subject to a non-compete obligation. Your Honor, we have cited to you, I would, I would love to be able to cite to you an Iowa case. There is not an Iowa case on point, but we have cited to you the Magic Valley case, the Fowler case. The Fowler case itself cites a number of cases. The Kalman Treatise, the Restatement 768 Comment I, all of these are clear. And again, I just, just want to quote from the Restatement 768 I that, that an employer may be, excuse me, that a defendant engaged in the same business might induce the employee to quit his job, but he would not be justified in engaging the employee to work for him in an activity that would mean violation of the contract not to compete. And so, the Trans Am has cited no cases that hold that it is okay for a employer to knowingly coach an employee subject to a non-compete obligation and has cited no cases holding that some special form of inducement of and beyond that is required. Even if the court wants to not to look to 768 Comment I, but to stick with Restatement 766, Restatement 7066 is itself says that inducement is not an element of an intentional interference claim. As Restatement 7066 Comment H says, the rule applies to any intentional causation, whether by inducement or otherwise. The essential thing is the intent to cause the result. And here, I don't think there can be any question that when Trans Am in this tight labor market where it is trying to get drivers that are trained without having to outlay the costs of those drivers' trainings makes an offer to a CRST employee, Trans Am intends to cause that employee to violate their non-compete obligation to CRST. Thank you, Your Honor. Thank you, Counsel. Case has been thoroughly briefed and well argued and complex issues. We'll take it under advisement.